ANOUSH HAKIMI (State Bar No. 228858)
anoush@handslawgroup.com
PETER SHAHRIARI (State Bar No. 237074)
peter@handslawgroup.com
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
7080 Hollywood Blvd., Suite 804
Los Angeles, CA 90028

Telephone: (323) 672 - 8281
Facsimile: (213) 402 - 2170
Attorneys for Plaintiff,
**RACHEL LEE**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Rachel Lee, <br><br> Plaintiff, <br><br> v. <br><br> Ari Highland Village LP, a California Limited Partnership; and Does 1-10 <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR VIOLATIONS OF: AMERICAN'S WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181** *et seq.*; **UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51** *et seq.* <br><br> JURY DEMAND |

Plaintiff Rachel Lee (hereinafter referred to as "Plaintiff"), complains of Ari Highland Village LP, a California Limited Partnership, and Does 1-10 (each, individually a "Defendant" and collectively "Defendants") and alleges as follows:

**I.    PARTIES**

1.    Plaintiff is confined to a wheelchair and can barely see. Plaintiff suffers from severe fibromyalgia which prevents Plaintiff from walking or standing. Plaintiff is also visually impaired. Plaintiff relies on a wheelchair for mobility. Plaintiff cannot walk or stand without assistance. Plaintiff is qualified as being disabled pursuant to 42 USC Section 12102(2)(A), the California Unruh Civil

COMPLAINT

Rights Act, Sections 51, et seq. and 52, et seq., and other statutory laws which protect the rights of "disabled persons". She has been issued a Disabled Person Parking Placard by the State of California. Plaintiff is a California resident with physical disabilities.

2. Defendant Ari Highland Village LP, a California Limited Partnership, owned the property ("Property") located at 16964 S Highland Ave., Fontana, California 92336, at all relevant times.

3. There is a business establishment on the Property known as the "Sprouts" (hereinafter "the supermarket").

4. DOES 1 through 10 were at all relevant times lessors, lessees, property owners, subsidiaries, parent companies, employers, employees, agents, corporate officers, managers, principles and/or representatives of Defendants. Plaintiff is unaware of the true names and capacities of Defendants sued herein, as DOES 1 through 10, inclusive, and therefore, sues those Defendants by fictitious names. Plaintiff requests that the Court grant leave to amend this complaint to allege the true names and capacities when determined by whatever source.

5. Plaintiff alleges that Defendants at all times have been and are relevant to this cause of action, the owners, franchisees, lessees, general partners, limited partners, agents, employees, employers, represent partners, subsidiaries, partner companies, and/or joint ventures of the remaining Defendants and were acting within the course and scope of that relationship. Plaintiff is further informed and believes and alleges that each of the Defendants gave consent to, ratified, and/or authorized the acts alleged of each of the remaining defendants.

6. Plaintiff visited the public accommodations owned and operated by Defendants with the intent to purchase and/or use the goods, services, facilities, privileges, advantages or accommodations operated and/or owned by Defendants.

///

## II. JURISDICTION & VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the American with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (the "ADA").

8. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the ADA.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiffs cause of action arose in this district.

## III. FACTS

10. The Property owned by Defendants is a facility which is open to the public and is a business establishment.

11. Plaintiff alleges that the Property has been newly constructed and/or underwent remodeling, repairs, or alterations since 1992, and that Defendants have failed to comply with California access standards which applied at the time of each new construction and/or alteration or failed to maintain accessible features in operable working condition.

12. Plaintiff visited the Property during the relevant statutory period on May 2019 to patronize the supermarket.

13. Defendants did not offer persons with disabilities with equivalent facilities, privileges and advantages offered by Defendants to other patrons.

14. Plaintiff encountered barriers (both physical and intangible) that interfered with – and denied – Plaintiff the ability to use and enjoy the goods, services, privileges and accommodations offered at the Property.

15. Electric scooters for patrons visiting the Property are among the facilities, privileges, and advantages offered by Defendants to patrons of the Property.

16. These electric scooters are parked in the supermarket and are ostensibly offered to shoppers, particularly disabled shoppers, to help them while they shop.

17. Plaintiff was denied the use of the electric scooters offered because she could not access them. She could not reach them the way they were parked. The scooters were parked tightly alongside one another, next to a wall. They were parked so close to each other, there was no way for Plaintiff to reach the scooter, let alone embark, to ride one. The scooters were also too close to the wall to allow approach. While there is sometimes a supermarket employee called a "Greeter" who might be available to assist disabled patrons to reach the closely parked scooters, there was none to help Plaintiff that day. There often is a problem with availability of a supermarket employees to help patrons. Plaintiff must often wait unreasonable amounts of time to get help. Sometimes, like on this occasion, there was nobody available to help her, leaving Plaintiff frustrated and embarrassed.

18. Plaintiff was also denied service at the seafood counter. After the market employees put the seafood in bags for patrons, the supermarket employees physically place the bag with the seafood on the counter. However, the counter is high. The seafood counter is too high for a person in a wheelchair to reach. In the past Plaintiff has requested the supermarket employee hand her the bag of seafood which she could not otherwise reach if put on the counter. Sometimes the supermarket employees help. Sometimes, such as on this day, they do not.

19. The supermarket employee was rude to Plaintiff and did not hand her the seafood bag. When Plaintiff asked again to be handed the seafood bag, the supermarket employee refused in an impolite and dismissive manner.

20. Not only was there discriminatory conduct by Defendants denying the Plaintiff access, but there were also physical barriers which denied Plaintiff access to the facilities on the Property.

21. In additional to the discriminatory conduct of supermarket employees, physical and architectural barriers resulting from non-compliance of building codes and

disability laws existed.

22. Physical barriers added to the discriminatory conduct shutting disabled people out, denying them equal access.

23. Transaction counters are another one of the facilities, privileges, and advantages offered by Defendants to patrons of the Property.

24. However, there is no accessible seafood counter for disabled persons. None of the transaction counter areas comply with the Americans with Disabilities Act ("ADA").

25. The transaction counters do not comply with the latest California Building Codes ("2010 CBC Code").

26. Plaintiff cannot see what she is purchasing because the counter is too high. There is no lowered counter for disabled persons in wheelchairs.

27. There was no lowered, 36 inches or less, transaction counter for use by persons seated in a wheelchair. 2010 1122B.5; ADA 1991 Code § 7.2; ADA 2010 Code § 904. Without a lowered transaction counter, it is difficult for Plaintiff to use the counter to conduct business at the Property.

28. Plaintiff personally encountered these barriers.

29. These inaccessible conditions denied Plaintiff full and equal access and caused difficulty, humiliation and frustration.

30. The barriers existed during each of Plaintiff's visits in 2019.

31. Plaintiff alleges that Defendants knew that the architectural barriers prevented access. Plaintiff will prove that Defendants had actual knowledge that the architectural barriers prevented access and that the noncompliance with the ADAAG and Title 24 of the California Building Code regarding accessible features was intentional.

32. Plaintiff intends to return to Defendants public accommodation facilities in the near future. Plaintiff is currently deterred from returning because of the knowledge of barriers to equal access that continue to exist at Defendants' facilities that relate to

Plaintiff's disabilities.

33. Defendant has failed to maintain in working and useable conditions those features necessary to provide ready access to persons with disabilities.

34. Defendant, has the financial resources to remove these barriers without much expense or difficulty in order to make their Property more accessible to their mobility impaired customers. These barriers are readily achievable to remove. The United States Department of Justice has identified that these types of barriers are readily achievable to remove.

35. To date, Defendants refuse to remove these barriers.

36. On information and belief, the Plaintiff alleges that the Defendants' failure to remove these barriers was intentional because the barriers are logical and obvious. During all relevant times Defendants had authority, control and dominion over these conditions and therefore the absence of accessible facilities was not a mishap but rather an intentional act.

37. These barriers to access are described herein without prejudice to Plaintiff citing addition barriers to access after inspection by plaintiff's access agents, pursuant to *Doran v 7-ELEVEN, Inc.* 524 F3d 1034 (9th Cir. 2008) (holding once a plaintiff encounters one barrier at a site, a plaintiff can sue to have all barriers that relate to their disability removed regardless of whether they personally encountered them).

**IV. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C. section 12101, et seq.)**

(Against All Defendants)

38. Plaintiff alleges and incorporates by reference each and every allegation contained in all prior paragraphs of this complaint.

39. Title III of the ADA prohibits discrimination against any person on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges,

advantages, or accommodations of any place of public accommodation by any person who owns, leases or leases to, operates a place of public accommodation. U.S.C. § 12182(a).

40. Defendants discriminated against Plaintiff by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of Defendant's facility during each visit and each incident of deterred visit.

41. The acts and omissions of Defendant herein are in violation of Plaintiff's rights under the ADA and the regulations under 28 C.F.R. Part 36, *et seq.*

42. Pursuant to the ADA discrimination is a "failure to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford goods, services, facilities, privileged, advantages or accommodation to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii).

43. The ADA prohibits failing to remove structural architectural barriers in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." Id. § 12181(9). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36.

44. In the event removal of any barrier is shown to not be readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

45. Plaintiff alleges that Defendant can easily remove the architectural barriers at their facility without much difficulty or expense, and that Defendant violated the ADA by failing to remove those barriers because it was readily achievable to do so. There are companies in the area which can repaint the parking areas for as little as $350. Defendants can afford such costs given they are a fraction of what the Defendants takes in rental profits for such a large and expensive property.

46. In the alternative, if it was not "readily achievable" for Defendants to remove the facilities barriers, the Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

47. On information and belief, the facility was modified after January 26, 1992, mandating access requirements under the ADA.

48. The ADA requires that facilities altered in a manner that affects or could affect its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. §12183(a)(2).

49. Plaintiff alleges that Defendants altered the facility in a manner that violated the ADA and was not readily accessible to physically disabled persons, including Plaintiff, to the maximum extent feasible.

50. The ADA also requires reasonable modification in policies, practices, or procedures when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

51. Plaintiff alleges that Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the facility when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

52. Plaintiff seeks a finding from this Court that Defendants violated the ADA in order to pursue damages under California's Unruh Civil Rights Act for Disable Persons Act.

53. Here the Defendants' failure to make sure that accessible facilities were available and ready to be used by the Plaintiff is a violation of law.

54. Plaintiff would like to continue to frequent Defendants' facility because of because it is close to her home, but Plaintiff has been discriminated against and continues to be discriminated against because of the lack of accessible features.

55. Among the remedies sought, Plaintiff seeks an injunction order requiring

compliance with the state and federal access laws for all the access violations that exist at the Property.

**V. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH ACT (Cal. Civ. Code § 51-53.)**

(Against All Defendants)

56. Plaintiff repleads and incorporates by reference, as fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

57. California Civil Code § 51 states, in part: All persons within the jurisdictions of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

58. California Civil Code § 51 also states, in part: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

59. California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

60. The Unruh Act also provides that a violation of the ADA, or California state accessibility regulations, is a violation of the Unruh Act. Cal Civ. Code, § 51(f); Arnold v. United Artists Theatre Circuit, Inc., 866 F. Supp. 433, 439 (N.D.Cal.1994).

61. Defendants' above-mentioned acts and omissions have violated the Unruh Act by denying Plaintiff rights to full and equal use of the accommodations, advantages, facilities, privileges and services they offer, on the basis of Plaintiff's disability.

62. Defendants' above-mentioned acts and omissions have also violated the Unruh Act by denying Plaintiff rights to equal access pursuant to the ADA and are liable for damages. (Civ. Code § 51(f), 52(a)).

63. Because violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the Plaintiff, the Defendants are also each responsible

9
COMPLAINT

for statutory damages, such as a civil penalty. (Civ. Code § 52).

64. Plaintiff was actually damaged.

65. Plaintiff was damaged by Defendants' wrongful conduct and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans for Disabilities Act and the Unruh Civil Rights Act. Note: Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Person Acts.

2. Damages under the Unruh Civil Rights Act which provides for actual damages and a statutory minimum of $4,000 per each offense

**3.** Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED: June 17, 2019        THE LAW OFFICE OF HAKIMI & SHAHRIARI


By:    /s/ Peter Shahriari, Esq.
       PETER SHAHRIARI, ESQ.
       Attorney for Plaintiff